UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JUDITH L. HOWARD, )<br>)<br>      *Plaintiff* )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>**Commissioner of Social Security,** [1] )<br>)<br>      *Defendant* ) | Docket No. 06-96-B-W |

*REPORT AND RECOMMENDED DECISION*[2]

This Supplemental Security Income ("SSI") appeal raises the question whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from degenerative joint disease, affective mood disorder and anxiety-related disorder, is capable of making an adjustment to work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from degenerative joint disease of the

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), I have substituted new Commissioner of Social Security Michael J. Astrue as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 22, 2007, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

knees, left worse than right, an affective mood disorder and an anxiety-related disorder, impairments that were severe but did not meet or equal those listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Findings 2-3, Record at 16-17; that she retained the residual functional capacity ("RFC"), *inter alia*, to perform work that (i) would require her to follow instructions that would not require anything beyond a short demonstration up to and including one month, (ii) was consistent with a specific vocational preparation ("SVP") of Level 2 as defined by the Dictionary of Occupational Titles ("DOT"), and (iii) required no more than occasional interaction with the public or co-workers, Finding 4, *id*. at 18; that, considering her age ("younger individual"), education (at least high school), work experience and RFC, she could perform jobs existing in significant numbers in the national economy, Findings 6-7 & 9, *id*. at 23; and that she therefore had not been under a disability at any time through the date of decision, Finding 10, *id*. at 24. The Appeals Council declined to review the decision, *id*. at 6-8, making it the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the

commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff asserts that the administrative law judge erred in purporting to give the mental RFC ("MRFC") assessments of two non-examining Disability Determination Services ("DDS") psychological consultants considerable weight but failing to do so, as a result of which his findings as to MRFC were unsupported by substantial evidence of record. *See generally* Statement of Specific Errors ("Statement of Errors") (Docket No. 6). I find no reversible error.

## I. Discussion

With respect to MRFC, the administrative law judge determined that the plaintiff was able to (i) follow instructions that would not require anything beyond a short demonstration up to and including one month, (ii) perform work consistent with an SVP of 2 and (iii) perform work that did not require more than occasional interaction with the public or co-workers. *See* Finding 4, Record at 18.[3] In arriving at this conclusion, he explained, *inter alia*:

> The opinions from the state agency physician[s] are substantiated by the weight of the medical evidence of record[,] and I have largely adopted them with few modifications.
>
> \*\*\*
>
> Given the [plaintiff's] relatively high level of functioning in the home and her personal lifestyle choice of being a "stay-at-home-mom[,]" I have found that [she] has only mild limitations of daily living activities. She does not experience limitations of functioning at that level that would interfere with her ability to perform basic work activities. She has exhibited more moderate limitations of social functioning, in that she has been involved in some very volatile family situations, requiring family intervention in relation to her son. But again, this is more in a family setting than being

---

[3] The DOT defines "specific vocational preparation" as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Appendix C, § II to DOT (U.S. Dep't of Labor, 4th ed. rev. 1991). SVP levels range from 1 (short demonstration only) to 9 (over ten years). *See id*. A Level 2 SVP is "[a]nything beyond short demonstration up to and including 1 month[.]" *Id*. SVP Levels 1 and 2 correspond to unskilled work. *See* Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2006) ("SSR 00-4p"), at 245 ("Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.").

3

>exhibited in any fashion as anti-social behavior. However, because of her experience and history of anxiety, it would be best that the claimant avoid those work environments that would require her to work more than occasionally in close proximity with co-workers or the public. Finally, the [plaintiff's] concentration level does not appear to be more than moderately impacted by her depression and anxiety. But in work environments that would require more complex job instructions than what could [] be learned or demonstrated within thirty days, she could not be expected to adjust.

*Id.* at 22.

The Record contains two MRFC opinions rendered by non-examining DDS psychologists David R. Houston, Ph.D., and Lewis F. Lester, Ph.D., using Form SSA-4734-F4-SUP (8-85). *See id.* at 287-90, 422-25. In section I of the form, which contains a series of checkboxes and is titled "Summary Conclusions," Drs. Houston and Lester both checked a box (No. 11) indicating that the plaintiff was moderately limited, *inter alia*, in "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *Id.* at 288, 423.

>In section III of the form, titled "Functional Capacity Assessment," Dr. Houston wrote:
>
>Claimant reports physical limitations[.] Depression + anxiety are present[.] PTSD [Post-Traumatic Stress Disorder] is not fully supported nor is bipolar disorder. She babysits, goes to the soup kitchen. Functional ADLs [activities of daily living]. Only partial credibility is present[.]
>
>A – She can understand + remember simple instructions. She prepares meals + takes care of young children. Verbal memory index of 86[.]
>
>B – She can carry out simple tasks in an 8-hr day. She baby sits. See above.
>
>C – She can interact with co-workers + supervisors. She goes to the soup kitchen. Most of the time, she reports that she is not bothered by a crowd.
>
>D – She can adapt to routine changes[.]

*Id.* at 289. Dr. Lester wrote, in section III:

>This 39[-]year[-]old female has a <u>history</u> of <u>mood and behavioral</u> instability and <u>anxiety</u>. Statements of impairments and limitations are <u>only partially credible</u> . . . . In spite of impairments and associated limitations:

4

> [A] Claimant can understand and remember <u>simple tasks</u> and procedures. She prepares meals, shops, handles money and pays bills, and cares for her young children. She had no trouble remembering or understanding simple things at the consultative exam. Her mood disorder and anxiety preclude detailed or complex tasks.
>
> [B] She <u>can</u> be reliable and sustain 2° [two-hour] blocks at simple tasks at a consistent pace over a normal work day/week. She gets up a[t] 7 am daily to feed and care for her child. She keeps appointments. She carries out a very wide array of daily activities[.]
>
> [C] She <u>cannot</u> interact with the public due to her anxiety and mood instability. But she can interact with coworkers and supervisors in an ordinary work setting. She interacted adequately with the examiner, shops in the community, interacts and socializes.
>
> [D] She can adapt to routine changes, doing so in her daily domestic life, caring for her children and dressing appropriately.

*Id*. at 424-25 (emphasis in original).

At the plaintiff's hearing, the administrative law judge asked a vocational expert to assume a claimant who, among other things, could "follow instructions up to the complexity included in SVP two level work[,]" whose interaction with the public "may be occasional and incidental" and who "couldn't be dealing with people directly in her job, the public that is, a person she isn't familiar with" and who could "tolerate coworkers in a familiar work setting, and management, tolerate management, occasional redirection, that sort of thing." *Id*. at 87. The vocational expert testified that such a person could perform certain work, including assembly of small products. *See id*. at 89. At the suggestion of the plaintiff's representative, the administrative law judge then inquired whether a person with moderate limitations in ability to (i) complete a normal workday and workweek without interruptions from psychologically based symptoms and (ii) perform at a consistent pace without an unreasonable number and length of rest periods could perform work. *See id*. at 108-09; 288 (No. 11), 423 (No. 11). The plaintiff's representative was permitted to define these "moderate" limitations as creating an "occasional" inability to do those things, meaning that for a third of the time the person

5

would be unable to do them. *See id.* at 102, 108. The vocational expert testified: "As far as I'm concerned, that would preclude the maintenance of employment. . . . Period." *Id.* at 109. The vocational expert explained that, in his view, a "moderate" limitation on ability to perform at a consistent pace without an unreasonable number and length of rest periods meant that "the person is going to take so much time away from work that they will not remain employed. They'd be fired, or they'd be let go in a nice way, or they'll be told that they're laid off and not needed." *Id.* at 112.

The administrative law judge expressed discomfort with a narrow focus on the checkboxes contained in section I of the form, observing: "[T]hese psychiatric review techniques are very rough instruments by any stretch of the imagination. When you look at these multiple moderate limitations, you have to – to me – I, I'm looking at them in the context of the notes that the doctor makes under functional capacity assessment." *Id.* at 103-04.

In her Statement of Errors, the plaintiff complained that, although the administrative law judge purported to give significant weight to the Houston and Lester MRFC opinions, he ignored a number of moderate restrictions identified by both DDS psychologists, including the restriction that the vocational expert testified would preclude all work. *See* Statement of Errors at 3-4. In so arguing, she pointed to restrictions identified by Drs. Houston and Lester via checkboxes in section I of the MRFC form. *Compare id. with* Record at 287-88, 422-23. She contended that nothing in the narrative portion of Drs. Houston's and Lester's MRFC forms (section III) altered the basic findings set forth in section I. *See* Statement of Errors at 3-5.[4]

---

[4] The plaintiff asserted that, to the extent Dr. Lester addressed her reliability and ability to complete a normal workday and workweek in his section III narrative, he was venturing into "vocational issues." Statement of Errors at 4. This point, for which she cited no authority, *see id.*, patently is without merit. It is the job of a vocational expert to assess whether a person with certain stated functional restrictions can perform certain types of work in the national economy, not to determine whether a person's mental restrictions permit him or her to perform work reliably and at a consistent pace. *See, e.g.*, SSR 00-4p at 244 (noting that adjudicators rely on both DOT and vocational experts "for information about the requirements of work in the national economy").

Unfortunately for the plaintiff, her entire argument as originally articulated in her Statement of Errors rested on a faulty foundation – the assumption that the section I checkboxes constitute the "real" MRFC, while the section III narrative is some sort of extraneous material. In fact, the opposite is true: The section III narrative is the MRFC. *See* Social Security Administration Program Operation Manual System ("POMS") § DI 24510.060(B)(2)(a) & (4)(a), *available at* https://s044a90.ssa.gov/apps10/ ("Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment. . . . Section III – Functional Capacity Assessment, is for recording the mental RFC determination. It is in this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings.") (boldface omitted).

Confronted at oral argument with this proposition, counsel for the plaintiff nimbly shifted focus, arguing that even if section III is the "be all and end all," problems remain.[5] Specifically, he contended that:

1. The administrative law judge was obliged to adopt either Dr. Houston's or Dr. Lester's section III opinion wholesale rather than picking and choosing; alternatively, at the least, the administrative law judge had to explain why he had not adopted some part of them. In this case, plaintiff's counsel argued, the administrative law judge both (i) made findings that clashed with those of the DDS psychologists as articulated in section III and (ii) ignored some of their section III findings.

---

[5] Counsel arguably should have anticipated the weakness of his central argument and raised this alternative point in his statement of errors. This court has warned that a failure to do so is tantamount to a waiver of the belatedly raised point. *See, e.g., Farrin v. Barnhart*, No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted). Nonetheless, inasmuch as (i) counsel raised these points in response to questions I posed, (ii) counsel for the commissioner did not object to their belated assertion, and (iii) they are, in any event, not outcome-determinative, I have considered them.

He cited the following examples: Although Dr. Lester stated emphatically that the plaintiff could not interact with the public, the administrative law judge found that she could do so occasionally, and although Dr. Houston stated that she could adapt to routine changes (suggesting that she could not adapt to non-routine changes), the administrative law judge neither adopted nor addressed that restriction.

2. Drs. Lester and Houston did not in fact provide a complete MRFC assessment in section III inasmuch as their section III narratives fail to address significant findings made via their section I checkboxes, including Finding No. 11, reflecting the limitation that the vocational expert testified would preclude all employment (moderate limitations in ability to (i) complete a normal workday and workweek without interruptions from psychologically based symptoms and (ii) perform at a consistent pace without an unreasonable number and length of rest periods), and Dr. Houston's Finding No. 6, that the plaintiff's ability to maintain attention and concentration for extended periods was moderately impaired.

For the reasons that follow, neither point is persuasive:

1. In this circuit, picking and choosing among experts' opinions does not in itself constitute error. *See, e.g., Evangelista v. Secretary of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987) ("The basic idea which the claimant hawks – the notion that there must always be some super-evaluator, a single physician who gives the factfinder an overview of the entire case – is unsupported by the statutory scheme, or by the caselaw, or by common sense, for that matter. Though it is sometimes useful to have such testimony presented, we decline to lay down an ironclad rule that, without it, a judge is powerless to piece together the relevant medical facts from the findings and opinions of multiple physicians.").

Here, the administrative law judge took care to note that he was adopting the DDS opinions with modifications. *See* Record at 22. He explained why he considered the plaintiff capable of

8

interacting occasionally with the public: Despite her anxiety, her moderate difficulties in social functioning had manifested themselves more in the context of volatile family situations than in general anti-social behavior. *See id*. In addition, while not specifically noted by the administrative law judge, Dr. Houston did not make an unequivocal finding of inability to interact with the public. *Compare id*. at 425 (Dr. Lester: "She cannot interact with the public due to her anxiety and mood instability[.]") *with id*. at 289 (Dr. Houston: "She can interact with co-workers + supervisors. She goes to the soup kitchen. Most of the time, she reports that she is not bothered by a crowd.").

Nor is it fair to characterize the administrative law judge as having ignored Dr. Houston's observation that the plaintiff could adapt to routine changes. In the body of his decision, he stated: "[I]n work environments that would require more complex job instructions than what could [] be learned or demonstrated within thirty days, she could not be expected to adjust." *Id*. at 22. In keeping with that observation, he deemed the plaintiff capable of following instructions that would not require anything beyond a short demonstration up to and including one month. *See* Finding 4, *id*. at 18.

Circling back to the plaintiff's original premise – that the administrative law judge ignored a number of moderate restrictions imposed by Drs. Houston and Lester despite purporting to give their opinions great weight – I am satisfied that, when one compares the administrative law judge's MRFC determination with those of Drs. Houston and Lester as expressed in section III of the MRFC form, it is apparent that he did as he said. *Compare id. with id*. at 289, 424-25. His MRFC finding accordingly is supported by substantial evidence of record.

2. The POMS directs consultants to provide a "comprehensive expression of mental RFC" in section III of the MRFC form. *See* POMS § DI 24510.065(B)(1)(a) (directing consultants, *inter alia*, to "[d]escribe, in detail [in section III of MRFC form], the mental capacities, limitations, and any other information that is important in the comprehensive expression of mental RFC")

9

(boldface omitted).  I am unpersuaded that Drs. Houston and Lester failed to do so in this case.  As pointed out by counsel for the commissioner at oral argument, for purposes of the section I checkboxes, there is no monolithic definition of the term "Moderately Limited," which encompasses a wide range of territory between the endposts of a finding of "Not Significantly Limited" and a finding of "Markedly Limited."  *Compare id*. § DI 24510.063(B)(2) (instructing consultants to check "Moderately Limited" box in section I of MRFC form "when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired"; noting, "The degree and extent of the capacity or limitation must be described in narrative format in Section III.") (boldface omitted) *with id*. § DI 24510.063(B)(1) (instructing consultants to check "Not Significantly Limited" box "when the effects of the mental disorder do not prevent the individual from consistently and usefully performing the activity") (boldface omitted) & *id*. § DI 24510.063(B)(3) (instructing consultants to check "Markedly Limited" box "when the evidence supports the conclusion that the individual cannot usefully perform or sustain the activity") (boldface omitted).

It is clear enough, in comparing Drs. Lester's and Houston's section I checkboxes with their section III findings, that they translated the findings of moderate limitation that the plaintiff has highlighted (in ability to (i) complete a normal workday and workweek without interruptions from psychologically based symptoms, (ii) perform at a consistent pace without an unreasonable number and length of rest periods and (iii) maintain attention and concentration for extended periods) into an ability to perform only simple, relatively undemanding, tasks.  *See, e.g*., Record at 289 (finding of Dr. Houston that plaintiff could "understand + remember simple instructions" and "carry out simple tasks in an 8-hr day"), 424-25 (finding of Dr. Lester that plaintiff could "understand and remember simple tasks and procedures" and "be reliable and sustain 2° [two-hour] blocks at simple tasks at a consistent

pace over a normal work day/week"). Thus, the section I checkbox findings highlighted by the plaintiff's counsel at oral argument were adequately explained and accounted for in section III.[6]

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 27th day of March, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

---

[6] It is also clear, as argued by counsel for the commissioner, that the vocational expert's testimony that a person with the restrictions found in Checkbox No. 11 could not work was based on the flawed predicate that such an individual would be unable to carry out the listed functions one-third of the time (regardless of the complexity of the underlying tasks). *See* Record at 102, 108-09, 112.